# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **SHENZHEN JISU TECHNOLOGY CO., LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**THE ENTITIES AND INDIVIDUALS IDENTIFIED IN ANNEX A**<br><br>Defendants. | Civil Action No.: 23cv14016 |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which **Shenzhen Jisu Technology Co., LTD.** ("Plaintiff") accuses the Entities and Individuals identified in Annex A ("Defendants") of infringing U.S. Patent Nos. D886,982 (the "Patent-in-Suit" or the "'982 Patent") under 35 U.S.C. §271, alleging as follows:

## PARTIES

1. Plaintiff is the owner of the Patent-in-Suit and sells foldable fans on online platforms to U.S. customers. A true and correct copy of the '982 patent is attached hereto as Exhibit A.

2. Shortly after Plaintiff started to sell the foldable fans online to U.S. customers, Plaintiff found out that hundreds of sellers on various online platforms also started to sell foldable fans identical or substantially similar to claimed design at a much

1

lower price. Many of the webpages that provide the infringing products even include exactly the same product image.

3. Defendants are individuals and entities who sell and/or offer to sell infringing products through various "storefronts" via online retail websites accepting U.S. Dollars. Upon information and belief, Defendants reside and operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

4. Upon information and belief, the Defendants receive or purchase the infringing products from one or more major manufacturers in China. The identities of the major manufacturers remain unknown to Plaintiff.

5. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in ANNEX A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network.

6. At present, many of the Defendants use different nondescript seller aliases and can only be identified through their storefronts and other limited publicly available information. No credible information regarding Defendants' physical addresses is provided. Plaintiff will voluntarily amend its Complaint as needed if Defendants provide additional credible information regarding their identities.

## DEFENDANTS' UNLAWFUL CONDUCT

7. According to FY 2021 Intellectual Property Right Seizure Statistics report by U.S. Customs and Border Protection ("CBP"), 51% of the total number of seizure lines originated from mainland China and Hong Kong. Exhibit C, FY 2021 Intellectual Property Right Seizure Statistics report.

8. Third party online platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Exhibit D, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020). "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." Exhibit E, *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39.

9. Defendants employ and benefit from substantially similar advertising and marketing strategies in concert. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from

an authorized retailer. Many of the Defendants employ the same product images and sell identical products.

10. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

11. E-commerce store operators like Defendants regularly register new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down. Even after being shut down, such e-commerce store operators may conveniently register another storefront under another seller alias and continue to sell the infringing products.

12. Defendants use many fake names, but their e-commerce stores have common identifiers, such as similar templates that hide any contact or identification information. Their stores also have other shared features, such as the same registration, payment, check-out, keywords, advertising, price, quantity, grammar, spelling, text, and images. Moreover, the products they sell are not authorized and have similar flaws, which implies that they come from the same source and that Defendants are connected.

13. Defendants use different fake names and payment accounts to keep selling despite Plaintiff's actions. They also have bank accounts outside this Court's reach and may move money there to avoid paying any monetary judgment to Plaintiff. In fact,

financial records from similar cases show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones.

14. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet.

## JURISDICTION AND VENUE

15. This is an action for infringement of the Patents-in-Suit arising under 35 U.S.C. §§ 271(a), 281, and 284 - 85. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 and §1338(a).

16. Each Defendant sells and/or offers to sell infringing products through various "storefronts" via online retail websites accepting U.S. Dollars through eBay, Amazon, Walmart, and other website platforms through which each Defendants target residents in this judicial district and, upon information and belief, ships infringing products to residents within the Northern District of Illinois. Thus, each Defendant is committing, *inter alia*, patent infringement in this District.

17. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, each Defendant has committed acts of infringement in and has significant contacts within this District, and each Defendant as delineated in Annex A is selling or offering to sell the infringing products in the product listings targeted at this District.

## U.S. PATENT NO. D886,982

18. On June 9, 2020, United States Design Patent No. D886,982 (the "'982 patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "FOLDABLE FAN." A true and correct copy of the '982 patent is attached hereto as Exhibit A.

19. Plaintiff is the owner of the '982 patent.

20. Plaintiff sells products that include the design protected by the '982 patent, herein referred to as the "Design."

| Patent Number | Claimed Design | Issue Date |
| --- | --- | --- |
|  |  |  |

FIG. 11



FIG. 12

FIG. 13







FIG. 19

FIG. 20

11

## COUNT I
## INFRINGEMENT OF U.S. DESIGN PATENT NO. D886,982

21. Defendants directly or through intermediaries offer to sell and/or sell foldable fans which infringe the '982 patent.

22. Upon information and belief, Defendants have been and are now infringing the claim of the '982 patent in the State of Illinois, in this judicial district, and other jurisdictions in the United States by selling or offering to sell the infringing foldable fans. The Defendants are directly infringing, literally infringing, and/or infringing the '982 Patent under the doctrine of equivalents.

23. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the ornamental design claimed. *See* Exhibit B Claim Chart.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

1. a judgment in favor of Plaintiff that Defendants have infringed the Patents-in-Suit;

2. a permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the Patents-in-Suit, or such other equitable relief the Court determines is warranted;

3. a judgment and order requiring Defendants pay to Plaintiff their damages, costs, expenses, lost profits, and prejudgment and post-judgment interest for Defendants'

infringement of the Patents-in-Suit as provided under 35 U.S.C. § 284, and an accounting of ongoing post-judgment infringement;

4. a determination that this is an exceptional case within the meaning of 35 U.S.C. § 285 and an award to Plaintiff the costs, expenses, and reasonable attorneys' fees incurred in this action; and

5. that, upon Plaintiff's request, all in privity with Defendants and with notice of the injunction, including but not limited to any online marketplace platforms, such as Alibaba, Ali Express, Amazon, DH Gate, eBay, Newegg, Shopify, Wish, and vendors of sponsored search terms or online ad-word providers, financial services providers, including but not limited to credit card providers, banks, merchant account providers, third party payment processors, web hosts, and Internet search engines, such as Google, Bing, and Yahoo shall:

    a. cease providing services used by Defendants, currently or in the future, to sell or offer for sale goods under the '982 patent;

    b. cease displaying any advertisements in any form, connected or associated with Defendants in connection with the sale of infringing goods under the '982 patent; and

    c. disable all links to the marketplace accounts identified on Annex A from displaying in search results, including from any search index.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED September 22, 2023                              Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
203 N. LaSalle St., Suite 2100
Getech Law LLC
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

/s/ Jun Ye
Jun Ye (Pro Hac Vice to be filed)
Jun.ye@getechlaw.com
New York Bar No.: 5098116
Getech Law LLC

*ATTORNEY FOR PLAINTIFF*