# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHENZHEN JISU TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE ENTITIES AND INDIVIDUALS IDENTIFIED IN ANNEX A, <br><br> Defendants. | Case No. |

## DECLARATION OF JIAHANG XIE

I, JIAHANG XIE, hereby declare, and state as follows:

1. I am over the age of eighteen and have personal knowledge of the facts set forth in this Declaration. I am competent to testify as to all matters stated, and I am not under any legal disability that would in any way preclude me from testifying. The following information regarding sales information is accurate to the best of my knowledge.

2. I am the general counsel of SHENZHEN JISU TECHNOLOGY CO., LTD. ("Plaintiff"). We are the owner of the U.S. Patent D886,982 (hereinafter the "'982 Patent"), which makes and sells a range of faucet extender products under the '982 Patent. Attached hereto as Exhibit A-1 is a true and correct copy of '982 Patent registration. As the general counsel of Plaintiff, I have personal knowledge regarding the '982 Patent intellectual property and sales. I make this declaration from my personal knowledge unless otherwise stated.

3. We put large efforts in marketing the foldable fans covered by the '982 patent. We have invested significant time, money, and manpower into the promotion of the '982 Patent-protected products, including advertising, promotions, and online publications.

4. We started to launch the products and received great commercial success in Amazon and sold 1,266,780 units of the products since the launch. We started to sell the products around the early of May 2019. Our Amazon Marketplace is the primary sales point. Moreover, we are the top seller on Amazon, ranking first or second in sales all year round.

5. Defendants, through Amazon.com, eBay.com, and Walmart Seller Accounts, offer infringing '982 Patent-based products using the registered '982 Patent. These products are advertised as and are similar in appearance to original '982 Patent products. As shown in the claim chart, all limitations of the '982 patent are included in the infringing products. *See* Exhibit A-2.

6. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois.

7. Upon information and belief, many of the infringing products are supplied by one or more major manufacturers in China. These major manufacturers remain anonymous to us and we expect to find out the identities of the manufacturers for further enforcement. There may also be several manufacturers that we have sued for infringement in China, but they continue to manufacture and continue to sell infringing products in the United States.

8. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the

ecommerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. In the United States, we have not sub-licensed the '982 Patent to other parties for their use.

9. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

10. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

11. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. Ecommerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or

the use of the same text and images. Additionally, Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

12. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in WeChat groups and through websites such as sellerdefense.cn regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

13. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment.

14. Defendants are working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license, have jointly and severally, knowingly and willfully made, used, offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes the '982 Patent. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet.

15. Monetary damages cannot adequately compensate us for ongoing infringement because monetary damages fail to address the damage to our control over its rights in the claimed Design, its reputation, associated goodwill, and ability to exploit the protected invention. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our control over its rights in the protected invention, its reputation, associated goodwill, and ability to exploit the protected invention by acts of infringement.

16. We are further irreparably harmed by the unauthorized making, using, offering for sale, selling, or importing of goods that infringe the protected invention because infringers take away our ability to control the nature and quality of the Infringing Products. Loss of quality control over goods made, used, offered for sale, sold, or imported featuring the protected invention and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

17. We will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

18. Attached hereto as Exhibit A-3 are true and correct copies of images captured from Defendants' online store listings showing the infringing products.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on the 22nd day of September, 2023, in Shenzhen, China

Respectfully submitted,

*Jiahang Xie*
JiaHang Xie

2023-9-22
Date